**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br><br>and<br><br>LOUISIANA DEPARTMENT OF ENVIRONMENTAL QUALITY,<br><br>Plaintiffs,<br><br>v.<br><br>NUCOR STEEL LOUISIANA, LLC,<br><br>Defendant. | ) | Case No. |

**COMPLAINT**

Plaintiffs, the United States of America (United States), by authority of the Attorney General of the United States and acting on behalf of the United States Environmental Protection Agency (EPA), and the Louisiana Department of Environmental Quality (LDEQ), by and through its undersigned attorney, file this Complaint and allege as follows:

**NATURE OF THE ACTION**

1. The United States and the LDEQ bring this civil action against Nucor Steel Louisiana, LLC (Nucor) for thousands of violations of the Clean Air Act (CAA), 42 U.S.C. § 7401 *et seq.*, and the Louisiana Environmental Quality Act (LEQA), Louisiana Revised Statutes 30:2001 *et seq.*, the regulations promulgated pursuant to those statutes, and the operating permits that incorporate those requirements.

2. Plaintiffs seek injunctive relief and civil penalties for violations of the CAA and

LEQA at Nucor's iron ore processing facility located at 9101 LA Hwy 3125, Convent, St. James Parish, Louisiana ("Nucor Facility" or "Facility"). The violations relate to unauthorized and excess emissions from Nucor's operations; Nucor's failure to meet monitoring requirements; Nucor's failure to submit a permit application and modification; and Nucor's failure to employ the best available control technology to control emissions for regulated pollutants. These violations resulted in the illegal emission of pollutants into the atmosphere, including hydrogen sulfide, nitrogen oxides (NOx), sulfur dioxide, sulfuric acid, particulate matter (PM), volatile organic compounds (VOCs), carbon monoxide, arsenic, barium, cadmium, chromium, cobalt, copper, lead, manganese, nickel, and selenium.

3. Nucor has violated the following:

a. Title V of the CAA, 42 U.S.C. §§ 7661-7661f, the regulations promulgated thereunder at 40 C.F.R. Part 70 and 71, and LDEQ's approved Title V Program under LAC 33:III.Chapter 5;

b. Title I, Part C of the CAA, 42 U.S.C. §§ 7470-7492, the regulations promulgated thereunder at 40 C.F.R. Parts 51 and 52, and LDEQ's approved Prevention of Significant Deterioration Program under LAC 33:III Chapter 5;

c. Federally approved Louisiana State Implementation Plan (SIP) provisions; and

d. National Emissions Standards for Hazardous Air Pollutants (NESHAP) General Provisions, promulgated at 40 C.F.R. Part 63, Subpart A, pursuant to Section 112 of the CAA, 42 U.S.C. § 7412, and incorporated by reference at LAC 33:III.Chapter 51, Subchapter C.

## <u>JURISDICTION AND VENUE</u>

4. This Court has jurisdiction over the subject matter pursuant to Section 113(b) of

the CAA, 42 U.S.C. § 7413(b), and 28 U.S.C. §§ 1331, 1345, and 1355. This Court has personal jurisdiction over the Defendant, which does business in the State of Louisiana and in this judicial district.

5. This Court has jurisdiction pursuant to 28 U.S.C. § 1367 over LDEQ's claims under the LEQA because those claims are so related to the claims alleged by the United States that they form part of the same case or controversy.

6. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 and 1395 and Section 113(b) of the CAA, 42 U.S.C. § 7413(b), because the Facility is in the District where the alleged violations occurred or are occurring.

## NOTICE

7. On January 24, 2022, EPA issued a CAA Notification of Violation and Opportunity to Confer (NOV) to Nucor pursuant to Section 113(a)(1) of the CAA, 42 U.S.C. § 7413(a)(1), and provided a copy of the NOV to the State of Louisiana.

8. On November 3, 2022, EPA issued a second CAA NOV to Nucor pursuant to Section 113(a)(1) of the CAA, 42 U.S.C. § 7413(a)(1), and provided a copy of the NOV to the State of Louisiana.

9. Pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), LDEQ has received notice of the commencement of this action. LDEQ is a co-Plaintiff.

10. The 30-day period established in Section 113 of the CAA, 42 U.S.C. § 7413, between issuance of the NOVs provided by the United States and the commencement of this civil action has elapsed.

## AUTHORITY

11. The United States Department of Justice has authority to bring this action on behalf

of the Administrator of EPA under, *inter alia*, 28 U.S.C. §§ 516 and 519 and under Section 305(a) of the CAA, 42 U.S.C. § 7605(a). LDEQ's authority to bring this action, with the concurrence of the Louisiana Attorney General, derives from the CAA and La. R.S. 30:2025(A).

12. Effective April 7, 1995, EPA delegated to LDEQ the authority to implement and enforce the NESHAP program. *See* 60 Fed. Reg. 17750 (April 7, 1995); 60 Fed. Reg. 47296 (Sept. 12, 1995); 69 Fed. Reg. 15687 (March 26, 2004); 71 Fed. Reg. 19652 (April 17, 2006); 75 Fed. Reg. 19252 (April 14, 2010); 80 Fed. Reg. 9,613 (Feb. 24, 2015).

13. Effective January 25, 1982, EPA delegated to LDEQ the authority to implement and enforce the New Source Performance Standard (NSPS) program. *See* 47 Fed. Reg. 7665 (Feb. 22, 1982); 69 Fed. Reg. 15687 (March 26, 2004); 75 Fed. Reg. 19252 (April 14, 2010); 80 Fed. Reg. 9,613 (Feb. 24, 2015).

14. Effective October 12, 1995, EPA approved Louisiana's Title V Operating Permit Program. *See* 40 C.F.R. Part 70, Appendix A; 60 Fed. Reg. 47296 (Sept. 12, 1995). LDEQ's approved Operating Permit Program is in LAC 33:III.Chapter 5 ("Permit Procedures").

15. Notwithstanding the delegation of the NSPS and NESHAP program to Louisiana, EPA retains authority, concurrent with Louisiana, to enforce the NSPS and NESHAP programs. *See* 42 U.S.C. §§ 7411(c)(2) and 7412(*l*)(7). Notwithstanding approval of Louisiana's Operating Permit Program, EPA retains the authority, concurrent with the State, to enforce any regulation promulgated or permit promulgated, issued, or approved under Title V of the CAA. *See* 42 U.S.C. § 7413(a)(3).

## DEFENDANT

16. The Defendant, Nucor, is a limited liability company formed in the state of Delaware and registered to do business in the state of Louisiana.

17. Nucor is a "person" within the meaning of Sections 113(b) and 302(e) of the CAA, 42 U.S.C. §§ 7413(b) and 7602(e), and the applicable federal and state regulations.

18. At all times pertinent to this suit, Nucor has been an "owner or operator" of the Nucor Facility within the meaning of Section 112(a)(9) of the CAA, 43 U.S.C. § 7412(a)(9); and the applicable federal and state regulations.

## FACILITY DESCRIPTION

19. Nucor processes natural gas and iron ore pellets into direct reduced iron (DRI) at the Facility and then ships that material offsite to steel mills for making steel products.

20. The Nucor Facility includes the following emissions sources that are relevant to this Complaint:

a. PH-1 – Direct Reducing Iron (DRI) Unit No. 1 Process Gas Heater (known as "EQT0069");

b. HF-1 – DRI Unit No. 1 Hot Flare (known as "EQT0071"); and

c. AV-1 – DRI Unit No. 1 Acid Gas Absorption Vent (known as "EQT0072").

## STATUTORY AND REGULATORY BACKGROUND

## I. CLEAN AIR ACT AND LOUISIANA SIP

21. The Clean Air Act establishes a regulatory scheme designed to protect and enhance the quality of the nation's air to promote the public health and welfare and the productive capacity of its population. Section 101(b)(1) of the CAA, 42 U.S.C. § 7401(b)(1).

### A. The National Ambient Air Quality Standards and the State Implementation Plan

22. The CAA required EPA to promulgate national ambient air quality standards (NAAQS) to protect the public health and welfare for certain criteria air pollutants. 42 U.S.C. §§ 7408 and 7409.

23. Each state must adopt and submit to the EPA Administrator a plan that provides for implementation, maintenance, and enforcement for each promulgated NAAQS in each air quality control region (or portion thereof). 42 U.S.C. § 7410(a). Each plan, known as a state implementation plan (SIP), must include enforceable emission limitations and other control measures as well as a permit program to regulate the modification and construction of any stationary source within the areas covered by the plan as necessary to ensure that NAAQS are achieved. 42 U.S.C. § 7410(a)(2)(A), (C).

24. The SIP must also provide for the establishment and operation of appropriate devices, methods, systems, and procedures necessary to monitor, compile, and analyze data on ambient air quality and, upon request, provide such data to EPA. 42 U.S.C. § 7410(a)(2)(B).

25. SIP requirements are federally enforceable, upon EPA's approval of the SIP. 42 U.S.C. §§ 7413(a) and (b).

26. Any permit limitation or condition (contained within a permit issued under an EPA-approved program that is incorporated in a SIP) is a requirement of the SIP and is federally enforceable under Section 113, 42 U.S.C. § 7413. 40 C.F.R. § 52.23.

27. The State of Louisiana has adopted a CAA SIP with regulations approved by EPA. 40 C.F.R. § 52.970(c).

### B. Title V of the CAA

28. Title V of the CAA, 42 U.S.C. §§ 7661-7661f, establishes a federal operating permit program for certain air pollution sources, including "major sources."

#### 1. Louisiana's Title V Operating Permit Program

29. The regulations of Louisiana's Operating Permit Program are codified in the Louisiana SIP at LAC 33:III.Chapter 5 and closely mirror the federal Title V regulations codified

at 40 C.F.R. Part 70.

30. No source subject to Title V, including a major source, may operate except in compliance with a Title V federal operating permit. 42 U.S.C. § 7661a(a); LAC 33:III.501.C and 507.A and B.

31. A "major source" under Title V includes, *inter alia*, any stationary source that is a major source as defined in Section 112 of the CAA, 42 U.S.C. § 7412. A major source is "any stationary source or group of stationary sources located within a contiguous area and under common control that emits or has the potential to emit considering controls, in the aggregate, 10 tons per year or more of any hazardous air pollutant [HAP] or 25 tons per year or more of any combination of [HAPs]." 42 U.S.C. § 7412(a)(1); LAC 33:III.502.

32. A "stationary source" is "any building, structure, facility, or installation which emits or may emit any air pollutant." 42 U.S.C. § 7411(a)(3); 40 C.F.R. § 63.2; LAC 33:III.502. A stationary source under Section 112 of the CAA has the same meaning under Section 111(a). 42 U.S.C. § 7412(a)(3).

33. Each Title V permit includes, *inter alia*, enforceable emission limitations, compliance schedules, and such other conditions as are necessary to assure compliance with "applicable requirements" of the CAA and the requirements of the relevant SIP. 42 U.S.C. § 7661c(a); 40 C.F.R. § 70.6(a) and (c); LAC 33:III.501.C and 507.A.3.

34. "Applicable requirements" include, *inter alia*, NSPS, NESHAP, and SIP requirements. 40 C.F.R. § 70.2; LAC 33:III.502.

35. Of relevance to this Complaint, the Louisiana Title V Operating Permit Program assures compliance with "applicable requirements" by including in its federal operating permits, *inter alia*, emission limits, specific requirements, and general conditions. LAC 33:III.535; 537.

36. Each term and condition in a Title V federal operating permit is federally enforceable, unless specifically designated in the permit as not being federally enforceable. 40 C.F.R. § 70.6(b)(2); LAC 33:III.501.C.7 and 507.B.2.

**i. <u>Louisiana SIP Section 501: Air Permit Procedures</u>**

37. Section 501 of the Louisiana SIP establishes the scope and applicability of air permit procedures. LAC 33:III.501.

38. Louisiana's Title V Operating Permit Program requires that no construction, modification, or operation of a facility that ultimately may result in an initiation or increase in emissions may begin until a Title V permit has been approved and issued by LDEQ. LAC 33:III.501.C.2, 507.B.2, and 517.A. Any such permit issued must incorporate all federally applicable requirements. LAC 33:III.501.C, 507.A.3, and 507.B.2.

39. Before an owner or operator of a major source constructs, modifies, or operates a facility that ultimately may result in an initiation of, or an increase in, emission of air contaminants, the owner or operator must (1) obtain an approved permit application, (2) pay the appropriate permit fee, and (3) obtain a permit issued by the permitting authority. LAC 33:III.501.C.2.

40. An owner or operator is "any person who owns, leases, operates, controls, or supervises a stationary source." 42 U.S.C. §§ 7412(a)(9) and 7411(a)(5); 40 C.F.R. § 63.2; LAC 33:III.502; LAC 33:III.111.

41. The owner or operator of a major source must operate each source under a permit unless an exemption to the source applies or has been granted in accordance with LAC 33:III.Chapter 5. LAC 33:III.501.C.4. The owner or operator must operate that source in accordance with all terms and conditions of the permit. Noncompliance with any term or condition of the permit constitutes a violation of Chapter 5 of the LAC and is grounds for enforcement action.

LAC 33:III.501.C.4.

42. Any terms and conditions of the permit issued pursuant to the SIP or to LAC 33:III.507 are enforceable by EPA unless specifically designated in the permit as not being federally enforceable. LAC 33:III.501.C.7.

**ii. Louisiana SIP Section 507: Operating Permit Regulations**

43. Section 507 of the Louisiana SIP outlines the Operating Permit Program, consistent with Part 70 of the CAA regulations. Part 70 establishes regulations for state operating permit programs to be consistent with the requirements of Title V of the CAA. LAC 33:III.507.

44. Section 507.H of the Louisiana SIP sets forth compliance measures and certifications of compliance for Part 70 sources. LAC 33:III.507.H.

45. A "Part 70 source" includes "any major source as defined in LAC 33:III.502; any nonmajor (area) source of hazardous air pollutants required to obtain an operating permit pursuant to regulations promulgated under Section 112 of the federal [CAA]; [and] any nonmajor source required to obtain an operating permit pursuant to regulations promulgated under Section 111 of the federal [CAA]. . . ." LAC 33 III:507.A.1; LAC 33:III.502; *see also* 40 C.F.R. § 70.1.

46. The compliance elements for permits issued to a Part 70 source must include certification, testing, monitoring, reporting, and recordkeeping requirements sufficient to assure compliance with the terms and conditions of the permit as required by 40 C.F.R. § 70.6(a)(3); 33:III.507.H.1.a.

**C. NSPS: Monitoring Requirements**

47. CAA Section 111 requires EPA to publish and periodically revise a list of categories of stationary sources that, in EPA's judgment, cause or contribute significantly to air pollution which may reasonably be anticipated to endanger public health or welfare. These

categories generally correspond to distinct manufacturing processes or equipment within a given industry. 42 U.S.C. § 7411(b)(1)(A). These standards are known as the NSPS.

48. Once EPA promulgated the NSPS, it became unlawful for any owner or operator of any new source to operate such source in violation of any standard of performance applicable to such source. 42 U.S.C. § 7411(e).

49. The NSPS apply to the owners or operators of any stationary source which contains an affected facility, where the construction or modification of which began after the date of publication of the NSPS. 40 C.F.R. § 60.1.

50. An affected facility is, "with reference to a stationary source, any apparatus to which a standard is applicable." 40 C.F.R. § 60.2.

51. The NSPS regulations provide certain monitoring requirements for affected facilities.

52. If a continuous monitoring system is used to demonstrate compliance with emission limits on a continuous basis, those continuous monitoring systems are subject to the provisions of Appendix F of the NSPS, unless otherwise specified. 40 C.F.R. § 60.13(a).

53. Appendix F establishes quality assurance procedures for continuous emissions monitoring systems (CEMS). 40 C.F.R. § 60, App. F. Procedure 1 of Appendix F establishes quality assurance requirements for gas CEMS used for compliance determinations. *Id.* at Procedure 1.

54. Under the NSPS regulations, a CEMS is "the total equipment required for the determination of a gas concentration or emission rate." 40 C.F.R. § 60, App. F., Procedure 1, Section 2.1.

55. There must be an audit of each CEMS at least once each calendar quarter.

Successive quarterly audits should occur no closer than two months apart. 40 C.F.R. § 60, App. F., Procedure 1, Section 5.1.

56. For a Relative Accuracy Test Audit, the owner or operator must conduct the audit at least once every four calendar quarters. 40 C.F.R. § 60, App. F., Procedure 1, Section 5.1.1.

57. For a Cylinder Gas Audit, the owner or operator may conduct the audit in three of four calendar quarters, but in no more than three quarters in a row. 40 C.F.R. § 60, App. F., Procedure 1, Section 5.1.2.

### D. <u>Prevention of Significant Deterioration and New Source Review</u>

#### 1. The CAA: Prevention of Significant Deterioration and New Source Review

58. Part C of Title I of the CAA, 42 U.S.C. §§ 7470–7492, sets forth requirements for the prevention of significant deterioration of air quality in those areas designated as either attainment or unclassifiable for purposes of meeting the NAAQS standards. These requirements are designed to "protect public health and welfare," "to insure that economic growth will occur in a manner consistent with the preservation of existing clean air resources," and "to assure that any decision to permit increased air pollution . . . is made only after careful evaluation of all the consequences of such a decision and after adequate procedural opportunities for informed public participation in the decision-making process." 42 U.S.C. § 7470.

59. EPA can delegate its authority to a state or regional air authority to enforce the federal prevention of significant deterioration (PSD) regulations set forth at 40 C.F.R. § 52.21, or a state or regional authority can have its own PSD regulations approved by EPA as part of its SIP. Those PSD regulations must be at least as stringent as the requirements set forth in the regulations at 40 C.F.R. § 51.166.

60. The PSD program regulates New Source Review pollutants. New Source Review

pollutants include criteria pollutants, such as PM and sulfur dioxide, and other pollutants such as sulfuric acid mist and hydrogen sulfide.

61. Louisiana's SIP includes PSD and New Source Review regulations. EPA approved Louisiana's PSD program in 1989.

**2. LAC 509: Louisiana SIP Prevention of Significant Deterioration and New Source Review**

62. Section 509 of the Louisiana SIP establishes the PSD program requirements and regulates New Source Review pollutants.

63. Section 165(a) of the CAA, 42 U.S.C. § 7475(a), its implementing regulations, and the Louisiana SIP prohibit the construction or modification of a major stationary source in an area designated as in attainment or unclassifiable, unless that facility has been issued a preconstruction PSD permit, which sets forth emission limitations that conform to the PSD requirements.

64. Section 509 of the Louisiana SIP includes requirements that apply to the construction of any new major stationary source, or any project at an existing major stationary source in an area designated as attainment or unclassifiable under Sections 107(d)(1)(A)(ii) or (iii) of the CAA. LAC 33:III.509.A.1. No new major stationary source or major modification that is subject to certain requirements of Section 509 (i.e., 509.J – R.5) shall begin actual construction without a permit that states that the major stationary source or major modification will meet those requirements. LAC 33:III.509.A.3.

65. Under the Louisiana PSD program, a "major stationary source" is "any of the stationary sources of air pollutants listed in Table A of [Section 509] that emits, or has the potential to emit, 100 tons per year or more of any pollutant (except for [greenhouse gases]) subject to regulation under [Section 509]; for stationary source categories other than those listed in Table A, . . . any stationary source that emits, or has the potential to emit, 250 tons per year or more of any

air pollutant (except for [greenhouse gases]) subject to [Section 509]; [or] any physical change that would occur at a source not otherwise qualifying as a major stationary source . . . if the change would constitute a major source by itself . . . ." LAC 33:III.509.B.

66. A "major modification" includes, *inter alia*, "any physical change in or change in the method of operation of a major stationary source that would result in a significant net emission increase of a regulated NSR [New Source Review] pollutant, and a significant net emission increase of that pollutant from the major stationary source." LAC 33:III.509.

67. Regulated New Source Review (NSR) pollutants include "any pollutant for which a national ambient air quality standard has been promulgated or any constituent or precursor for the identified pollutant." LAC 33:III.509.B.

68. Precursors identified by the Louisiana administrative authority include: (1) sulfur dioxide (a precursor to PM with a diameter of 2.5 microns or less ($PM_{2.5}$)); and (2) NOx (a precursor to ozone and a presumed precursor to $PM_{2.5}$ unless certain demonstrations establish that the NOx emissions are not a significant contributor to that area's ambient $PM_{2.5}$ concentrations). *Id.*

69. Regulated NSR pollutants also include (1) "any pollutant that is subject to any standard promulgated under Section 111 of the [CAA]"; (2) "any Class I or II substance subject to a standard promulgated under or established by Title VI of the [CAA]"; and (3) "any pollutant that otherwise is subject to regulation under the [CAA]; except that any or all hazardous air pollutants either listed in Section 112 of the [CAA] or added to the list in accordance with Section 112(b)(2) of the [CAA], which have not been delisted in accordance with Section 112(b)(3) of the [CAA], are not *regulated NSR pollutants* unless the listed hazardous air pollutant is also regulated as a constituent or precursor of a general pollutant listed under section 108 of the [CAA]." *Id.*

70. A "net emissions increase" is "the amount by which the sum of the following exceeds zero: (a) the increase in emissions from a particular physical change or change in method of operation at a stationary source as calculated in accordance with Paragraph A.4 of [Section 509]; and (b) any other increases and decreases in actual emissions at the source that are contemporaneous with the particular change and are otherwise creditable." 40 C.F.R. § 52.21(b)(3); LAC 33:III.509.B.

71. A net emissions increase of certain pollutants is "significant" when it equals or exceeds the following:

a. NOx: equal or exceed 40 tons per year,

b. Sulfur dioxide: equal or exceed 40 tons per year,

c. PM: equal or exceed 25 tons per year, and

d. Hydrogen sulfide: equal or exceed 10 tons per year.

40 C.F.R. § 52.21(b)(23)(i); LAC 33:III.509.B.

72. Owners and operators making major modifications must apply best available control technology (BACT) for each regulated NSR pollutant for which it would result in a significant net emissions increase at the source. This requirement applies to each proposed emissions unit at which a net emissions increase in the pollutant would occur because of a physical change or change in the method of operation in the unit. LAC 33:III.509.J.3.

73. "BACT" means "an emissions limitation based . . . on the maximum degree of reduction for each pollutant subject to regulation under [Section 509] which would be emitted from any proposed major stationary source or major modification." Application of BACT should never result in emissions of any pollutant which would exceed the emissions allowed by any applicable standard under 40 C.F.R. Parts 60 or 61. LAC 33:III.509.B; *see also* 42 U.S.C. § 7479(3); 40

C.F.R. § 52.21(b)(12).

**E. <u>National Emission Standards for HAPs</u>**

74. Section 112 of the CAA sets forth a national program for the control of HAPs. 42 U.S.C. § 7412. As originally promulgated in the CAA Amendments of 1970, Section 112 directed EPA to publish a list of HAPs. A HAP was defined as "an air pollutant to which no ambient air quality standard is applicable and which in the judgment of the Administrator may cause, or contribute to, an increase in mortality or an increase in serious irreversible, or incapacitating reversible, illness." 42 U.S.C. § 1857c-7 (1971). At that time, Congress directed EPA to establish HAP standards that provided "an ample margin of safety to protect the public health from such hazardous air pollutant." *Id.*

75. Section 112(d)(1) of the CAA required EPA to promulgate regulations establishing emission standards for categories and sub-categories of, *inter alia*, major sources of HAPs. 42 U.S.C. § 7412(d)(1).

76. These emission standards must require the maximum degree of reduction in emissions of HAPs that the Administrator determines is achievable for the new or existing sources in the category or subcategory to which the emission standard applies, while taking into consideration the cost of achieving such emission reduction, and any non-air quality health and environmental impacts and energy requirements. 42 U.S.C. § 7412(d)(2).

77. To the extent that it is not feasible to prescribe or enforce an emission standard for control of a HAP, Congress authorized EPA to promulgate "design, equipment, work practice, or operational" standards, which would be treated as emission standards. 42 U.S.C. § 7412(h).

78. After the effective date of any emission standard, limitation, or regulation promulgated pursuant to Section 112 of the CAA, no person may operate such source in violation

of such standard, limitation, or regulation. 42 U.S.C. § 7412(i)(3).

79. Pursuant to Chapter 51 of the Louisiana SIP, LDEQ implements the federal NESHAP program. The 40 C.F.R. Part 63 regulations as published in the Code of Federal Regulations on July 1, 2025, are incorporated by reference as they apply to "major sources" in the state of Louisiana. LAC 33:III.5122.A.

**1. NESHAP Subpart A: General Standards**

80. Pursuant to Section 112 of the CAA, 42 U.S.C. § 7412, EPA promulgated regulations that apply to stationary sources of HAPs that are subject to the NESHAP standards, regardless of their source category. 40 C.F.R. Part 63, Subpart A, §§ 63.1–63.16.

81. NESHAP Subpart A applies to the owner or operator of any stationary source that (i) emits or has the potential to emit any HAP listed in or pursuant to section 112(b) of the CAA; and (ii) is subject to any standard, limitation, prohibition, or other federally enforceable requirement established pursuant to this part. 40 C.F.R. § 63.1(b).

**2. NESHAP Subpart A: Monitoring Requirements**

82. NESHAP Subpart A requires the owner or operator of an affected source to maintain and operate each continuous monitoring system as specified in 40 C.F.R. § 63.8, or in a relevant standard, and in a manner consistent with good air pollution control practices. 40 C.F.R. § 63.8(c).

83. "Affected source" means the collection of equipment, activities, or both within a single contiguous area and under common control that is included in a Section 112(c) source category or subcategory for which a Section 112(d) standard or other relevant standard is established pursuant to Section 112 of the CAA. 40 C.F.R. § 63.2.

84. NESHAP Subpart A requires that all continuous monitoring systems, including

CEMS, are in continuous operation and meet minimum frequency of operation requirements. 40 C.F.R. § 63.8(c)(4).

85. Under the NESHAP regulations, a CEMS is "the total equipment that may be required to meet the data acquisition and availability requirements of this part, used to sample, condition (if applicable), analyze, and provide a record of emissions." 40 C.F.R. § 63.2.

**II. <u>Enforcement of the CAA</u>**

86. Section 113 of the CAA authorizes EPA to bring a civil action if the Administrator finds that any person violates any requirement or prohibition of an applicable SIP or permit. 42 U.S.C. § 7413(a)(1).

87. Section 113(a)(3) of the CAA authorizes EPA to bring a civil action if the Administrator finds that any person is in violation of, *inter alia*, any regulation promulgated or permit promulgated, issued, or approved under Sections 111 and 112 of the CAA, 42 U.S.C. §§ 7411 and 7412, or any regulation promulgated or permit promulgated, issued, or approved under Title V of the CAA, 42 U.S.C. §§ 7661-7661f. 42 U.S.C. § 7413(a)(3).

88. Section 113(b) of the CAA authorizes EPA to initiate a judicial enforcement action for a permanent or temporary injunction to address CAA violations, as well as to seek civil penalties on a per-day basis for each violation. 42 U.S.C. § 7413(b). The Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015, 28 U.S.C. § 2461 note: Pub. Law No. 114-74, § 701, 129 Stat. 599-600 (2015), requires EPA to periodically adjust its civil penalties for inflation. On January 8, 2025, EPA adopted and revised regulations entitled "Adjustment of Civil Monetary Penalties for Inflation," 40 C.F.R. Part 19, to upwardly adjust the maximum civil penalty under 42 U.S.C. § 7413(b). The Court is authorized to impose civil penalties of up to $124,426 per day for each violation that occurs or occurred after November 2, 2015, where penalties are assessed

on or after January 8, 2025. 40 C.F.R. § 19.4; 90 Fed. Reg. 1375 (January 8, 2025).

89. LAC 33:III promulgates the regulations and air quality standards and emissions limitations in accordance with the LEQA. LAC 33:III.101, 103. La. R.S. 30:2025(E)(1)(a) authorizes civil penalties "of not more than the cost to the state of any response action made necessary by such violation which is not voluntarily paid by the violator, and a penalty of not more than $32,500 for each day of violation. However, when any such violation is done intentionally, willfully, or knowingly, or results in a discharge or disposal which causes irreparable or severe damage to the environment or if the substance discharged is one which endangers human life or health, such person may be liable for an additional penalty of not more than $1,000,000." Pursuant to La. R.S. 30:2025, LDEQ is entitled to injunctive relief upon a determination of a violation of the LEQA. La. R.S. 30:2025(C).

## GENERAL ALLEGATIONS

90. EPA Region 6 and LDEQ inspectors conducted an on-site inspection at the Facility on March 22 and 23, 2022, and conducted additional follow-up inquiries with Nucor.

91. Through their inspection and investigation, EPA and LDEQ identified numerous violations at the Nucor Facility, many of which had been occurring for extended periods of time and over multiple years.

92. Without corrective measures ordered by the Court, Nucor is likely to violate its permits and emit excess pollution into the surrounding area again.

## I. The Nucor Facility

93. At all times relevant to this Complaint, Nucor has been the "owner or operator," as defined in Section 112(a)(9) of the CAA, of the Facility. 42 U.S.C. § 7412(a)(9).

94. At all times relevant to this Complaint, the Nucor Facility has been a "stationary

source" because it is a building, structure, facility, or installation that emits or may emit any air pollutant subject to regulation by the CAA or the SIP, such as sulfur dioxide and NOx. LAC 33:III.502, 42 U.S.C. § 7411(a)(3).

95. At all times relevant to this Complaint, the Nucor Facility has been a "major source" because it emits or has the potential to emit 10 tons per year or more of HAPs, such as n-hexane and ammonia, and 25 tons per year or more of any combination of HAPs, such as arsenic, hydrogen sulfide, sulfuric acid, and n-hexane. LAC 33:III.502; 42 U.S.C. § 7412(a)(1).

96. At all times relevant to this Complaint, the Nucor Facility has been a "major stationary source" because it is an iron and steel mill plant that emits, or has the potential to emit, 100 tons per year or more of any pollutant (except for greenhouse gases) subject to regulation under LAC 33:III.509. LAC 33:III.509.B. The Nucor Facility emits applicable regulated pollutants including, but not limited to, NOx and sulfur dioxide.

97. At all times relevant to this Complaint, the Nucor Facility has been a "Part 70 source" because it is a major source as defined in Section 502 of the Louisiana SIP. LAC 33:III.502.

**A. <u>Nucor's Federal Operating Permits</u>**

98. At all times relevant to this Complaint, Nucor has been subject to a federally enforceable Title V Federal Operating Permit and Prevention of Significant Deterioration Federal Operating Permit.

99. Nucor obtained, was operating under, and was responsible for complying with the following permits:

a. Title V Permit No. 2560-00281-V0 ("2560-00281-V0 Permit"), issued May 24, 2010;

b. Title V Permit No. 2560-00281-V1 ("2560-00281-V1 Permit"), issued January 27, 2011;

c. Title V Permit No. 3086-V0 ("Permit V0"), issued January 27, 2011;

d. Title V Permit No. 3086-V1 ("Permit V1"), issued March 8, 2012;

e. Title V Permit No. 3086-V2 ("Permit V2"), issued November 26, 2013;

f. Title V Permit No. 3086-V2AA ("Permit V2AA"), issued December 18, 2014;

g. Title V Permit No. 3086-V3 ("Permit V3"), issued April 21, 2015;

h. Title V Permit No. 3086-V3AA ("Permit V3AA"), issued July 1, 2015;

i. Title V Permit No. 3086-V4 ("Permit V4"), issued January 29, 2016;

j. Title V Permit No. 3086-V4AA ("Permit V4AA"), issued June 8, 2016;

k. Title V Permit No. 3086-V5 ("Permit V5"), issued June 22, 2018;

l. Title V Permit No. 3086-V6 ("Permit V6"), issued June 13, 2019;

m. Title V Permit No. 3086-V7 ("Permit V7"), issued August 8, 2019;

n. Title V Permit No. 3086-V8 ("Permit V8"), issued January 30, 2020;

o. Title V Permit No. 3086-V9 ("Permit V9"), issued June 23, 2020, and was administratively continued until Nucor received its next permit, Title V Permit No. 3086-V10 ("Permit V10") on September 20, 2023, which was amended on May 20, 2024 as Title V Permit No. 3086-V10-AA ("Permit V10-AA");

p. PSD-LA-730, issued May 24, 2010;

q. PSD-LA-740(M1) ("740(M1) Federal Operating Permit" or "740(M1) Permit"), issued July 9, 2013;

r. PSD-LA-751, issued January 27, 2011;

s. PSD-LA-751AA, issued July 19, 2012;

t. PSD-LA-751(M1) ("PSD Permit M1"), issued November 16, 2012;

u. PSD-LA-751(M2) ("PSD Permit M2"), issued November 26, 2013;

v. PSD-LA-751(M3) ("PSD Permit M3"), issued June 13, 2019; and

w. PSD-LA-751(M4) ("PSD Permit M4"), issued June 23, 2020, until September 20, 2023, when Nucor was issued its current permit ("PSD Permit M5").

## B. Emissions Standards of Nucor's Federal Operating Permits

100. At all times relevant to this Complaint, Title V of the CAA, the Louisiana SIP, and their respective applicable requirements have applied to Nucor and its Facility. This includes LAC 33:III.501.C.2 and C.4 and LAC 33:III.507.H.1.a.

101. At all times relevant to this Complaint, the Nucor Facility, as a source operating under a Title V federal operating permit, must comply with permit emission limits, permit Specific Requirements, Part 70 General Conditions at LAC 33:III.535, and Louisiana General Conditions at Section 537 of the Louisiana SIP (LAC 33:III.537).

102. The cover letter to Nucor's Title V Permit No. 3086 states that it "will be considered a violation of the permit if all proposed control measures and/or equipment are not installed and properly operated and maintained as specified in the application."

103. The following Table details the emissions provisions in Nucor's Title V Permit No. 3086 relevant to the timeframe of this Complaint.

**Table 1. Emissions from Nucor's Title V Permit No. 3086**

| | 3086-V4 | 3086-V4AA | 3086-V5 | 3086-V6 | 3086-V7 | 3086-V8 | 3086-V9 |
|---|---|---|---|---|---|---|---|
| **Permit Issued Date** | January 29, 2016 | June 8, 2016 | June 22, 2018 | June 13, 2019 | August 8, 2019 | January 30, 2020 | June 23, 2020 |
| **Emissions Limit for Hydrogen Sulfide** | not permitted | not permitted | not permitted | 0.11 tpy | 0.08 tpy | 9.77 tpy | 9.77 tpy |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| (tons per year) | | | | | | | |
| **Emissions Limit for Sulfur Dioxide**<br><br>(tons per year) | 6.71 tpy for EQT0069 | 6.71 tpy for EQT0069 | 7.50 tpy for EQT0069 | 7.35 tpy for EQT0069 | 7.35 tpy for EQT0069 | 9.76 tpy for EQT0069 | 9.76 tpy for EQT0069 |
| (max pounds per hour) | 1.85 lb/h for EQT0069<br><br>6.58 lb/h for EQT0071 | 1.85 lb/h for EQT0069<br><br>6.58 lb/h for EQT0071 | 2.77 lb/h for EQT0069<br><br>6.58 lb/h for EQT0071 | 1.85 lb/h for EQT0069<br><br>0.02 lb/h for EQT0071 | 1.85 lb/h for EQT0069<br><br>0.02 lb/h for EQT0071 | 2.45 lb/h for EQT0069<br><br>0.02 lb/h for EQT0071 | 2.45 lb/h for EQT0069<br><br>0.02 lb/hr for EQT0071 |
| **Emissions Limit for NOx at ETQ0069** (pound per million British Thermal Units) | 0.007 lb/ MMBtu | 0.007 lb/ MMBtu | 0.007 lb/ MMBtu | 0.007 lb/ MMBtu | 0.007 lb/ MMBtu | 0.007 lb/ MMBtu | 0.007 lb/ MMBtu |
| **Emissions Limit for Sulfuric acid** (max pounds per hour)<br><br>(tons per year) | not permitted | not permitted | not permitted | not permitted | not permitted | 1.18 lb/h for EQT0069<br><br>4.70 tpy for EQT0069 | 1.18 lb/h for EQT0069<br><br>4.70 tpy for EQT0069 |

104. From June 23, 2020, until January 29, 2021, Nucor's Title V Permit V9 also included the following maximum emissions limits at Process Gas Heater (EQT0069):

a. 7.35 pounds per hour of $PM_{2.5}$;

b. 7.35 pounds per hour of $PM_{10}$ (PM with a diameter of 10 microns or less);

c. 4.6 pounds per hour of volatile organic compounds;

d. 49.03 pounds per hour of carbon monoxide;

e. Less than 0.001 pounds per hour of arsenic;

f. 0.007 pounds per hour of barium;

g. 0.002 pounds per hour of cadmium;

h. 0.002 pounds per hour of chromium;

i. 0.005 pounds per hour of cobalt;

j. 0.001 pounds per hour of copper;

k. Less than 0.001 pounds per hour of lead;

l. 0.005 pounds per hour of manganese;

m. 0.002 pounds per hour of nickel; and

n. Less than 0.001 pounds per hour of selenium.

105. At all times relevant to this Complaint, Nucor's Title V permit included Specific Requirements.

106. Nucor must conduct audits (including a Relative Accuracy Test Audit and Cylinder Gas Audit) at the CEMS for NOx at EQT0069 in compliance with the procedures of Appendix F of 40 C.F.R. Part 60, Procedure 1, Section 5. *See* Title V Permit V9, Specific Requirement 60. LAC 33:III.507.H.1.a.

107. At all times relevant to the Complaint, Title I, Part C of the CAA, and the Louisiana SIP have applied to Nucor and its Facility, including LAC 33:III.509.A.3 and J.3.

108. From 2020 until January 29, 2021, Nucor's PSD federal operating permits included the following emissions limits at Process Gas Heater (EQT0069):

a. 5.54 pounds per hour of $PM_{2.5}$;

b. 5.54 pounds per hour of $PM_{10}$;

c. 1.85 pounds per hour of sulfur dioxide;

d. 36.92 pounds per hour of carbon monoxide; and

e. 4.6 pounds per hour of VOCs.

109. At all times relevant to this Complaint, Nucor's Title V and PSD permits included Specific Requirements for BACT.

110. Nucor must apply BACT for each regulated NSR pollutant for which it would result in a significant emissions increase at the Facility. *See* Specific Requirement 545 of Title V Permits V4 and V4AA, Specific Requirement 497 of Title V Permit V5, Specific Requirement 116 of Title V Permits V6 and V7, Specific Requirement 126 of Title V Permit V8, Specific Requirement 134 of Title V Permit V9; PSD-LA-751 (M2); PSD-LA-751 (M3); PSD-LA-751 (M4); *see also* LAC 33:III.501.C.4 and 509.J.3.

111. NSR pollutants emitted by the Nucor Facility that are relevant to this Complaint include sulfur dioxide, hydrogen sulfide, sulfuric acid, and NOx.

112. Nucor's PSD permit requires BACT for controlling sulfur dioxide as "acid gas scrubbing," which means the desulfurization of tail gas before it is routed to the Process Gas Heater as fuel. PSD-LA-751 (M2); PSD-LA-751 (M3); PSD-LA-751 (M4).

113. To control NOx, the PSD permit requires use of low-NOx burners and selective catalytic reduction with low-NOx fuel. *Id.* Nucor must comply with BACT for NOx at EQT0069, except during start up and shutdown events. *See* Specific Requirement 134 of Title V Permit V9.

### C. Sulfur Emissions at the Nucor Facility

#### i. Nucor's Sulfur Emissions Controls

114. When Nucor pursued building its Facility, it proposed building an HYL DRI

facility. Nucor represented its approach as innovative and that it would result in reduced sulfur compound emissions compared to similar facilities in the United States and around the world.

115. Nucor presented the "HYL approach" to LDEQ when applying for its PSD-LA-751 permit and Title V Permit V0 in 2011. The HYL approach is a method that is meant to convert iron ore into direct reduced iron by using reducing gases in a reactor.

116. To execute the HYL approach, the shaft reactor fills with reducing gas (a mixture of carbon monoxide and hydrogen), which is necessary to strip the oxygen of the iron ore feedstock that goes into the reactor. Reducing gas reduces the iron oxide into an iron carbide pellet.

117. Upon exiting the shaft furnace, the spent reducing gas from the DRI shaft reactor is cooled and scrubbed of dust and moisture. A portion of this gas is then supposed to be routed to the Acid Gas Recovery Unit to absorb carbon dioxide and hydrogen sulfide.

118. Nucor represented that routing the spent reducing gas through the Acid Gas Recovery Unit is supposed to produce "lean tail gas." Nucor's earlier permits (prior to Title V Permit V5) reflected a facility that, by design, would emit negligible amounts of hydrogen sulfide emissions. The Acid Gas Reduction Unit would scrub sulfur compounds from the fuel gas that was fed into the Process Gas Heater. This scrubbing reduces the sulfur compounds in the fuel gas, resulting in "lean tail gas."

119. This "lean tail gas" would subsequently be used to fuel the Process Gas Heater instead of sulfur "rich gas."

120. Rich gas is typically used in non-HYL DRI facilities. The lean gas should result in lower sulfur compound emissions than rich gas.

121. The permitting authority used the HYL process design to identify BACT for sulfur dioxide in the PSD permit. *See e.g.*, PSD-LA-751 (M2).

122. As required by its PSD permit, Nucor also used an additional reducing unit, known as the SulfurOx Unit. The SulfurOx Unit would capture sulfur in the acid gas stream, so Nucor does not have to release or flare sulfur-rich gas.

**ii. <u>Nucor Facility's 2019 Stack Test</u>**

123. From July 9, 2019, to July 11, 2019, Nucor conducted an engineering stack test ("July 2019 stack test") at the Nucor Facility of the following components: (1) a common stack for the Process Gas Heater (EQT0069), (2) Acid Gas Absorption Vent (EQT0072), and (3) bypass of the SulfurOx Unit, which is the sulfur control system.

124. A stack test is a performance test that can determine a facility's compliance with emissions limits. The stack test measures the amount of a specific regulated pollutant, pollutants, or surrogates being emitted; demonstrates the capture efficiency of a capture system; or determines the destruction or removal efficiency of a control device used to reduce emissions at facilities subject to the requirements of the CAA.

125. A stack means "any point in a source designed to emit solids, liquids, or gases into the air, including a pipe or duct but not including flares." 40 C.F.R. § 51.100(ff).

126. On November 8, 2019, following the engineering stack test, Nucor submitted an Unauthorized Discharge Notification to LDEQ to disclose unauthorized and excess emissions of hydrogen sulfide, sulfur dioxide, and sulfuric acid mist at the Facility.

127. The July 2019 stack test showed that there were several emissions exceedances at the Nucor Facility.

**iii. <u>Nucor Facility's failure to use lean tail gas as fuel in the Process Gas Heater</u>**

128. Following the July 2019 stack test, Nucor determined that it had routed rich tail gas to the Process Gas Heater burners for an unknown amount of time. This was not how Nucor had

represented the Facility's design to the permitting authority.

129. Instead, Nucor was supposed to route the "lean" tail gas (which was required as BACT in its permit).

130. Through further analysis and testing after the July 2019 stack test, Nucor discovered that, since at least July 2014, rich tail gas removed from the system prior to the Acid Gas Recovery Unit was being fed to the Process Gas Heater.

131. Rich tail gas contains hydrogen sulfide. Sulfur dioxide and sulfuric acid mist are byproducts of the combustion of hydrogen sulfide-containing rich tail gas.

132. When the fuel for the Process Gas Heater is untreated, that untreated gas is emitted into the atmosphere.

133. Due to rich tail gas (which also contains hydrogen sulfide) fueling the Process Gas Heater burners, the Nucor Facility emitted unauthorized or excess sulfur dioxide and sulfuric acid mist emissions.

134. The Nucor Facility had not been operating according to its originally permitted design for an unknown amount of time. Nucor determined the originally-permitted design was not even feasible to implement due to issues with the Acid Gas Recovery Unit.

135. Nucor attempted to find other pathways to route lean tail gas to the Process Gas Heater burners after the gas left the Acid Gas Recovery Unit. However, Nucor could not find a way to safely do so.

136. Nucor commissioned a lean tail gas design on February 25, 2021. Within 24 hours, the Nucor Facility tripped (shut down) due to complications associated with the lean tail gas routing design. After resetting the Facility, the Facility shut down again on March 21, 2021, due to lean tail gas complications.

137. Following a failed attempt to operate using lean tail gas in the Process Gas Heater burners on April 1, 2021, Nucor reverted to fueling the Process Gas Heater burners with rich tail gas.

138. By failing to implement the controls (which were determined to be BACT in its PSD permit), the Nucor Facility emitted excess sulfur dioxide and unauthorized or excess sulfuric acid.

**iv. <u>Nucor Facility's increased emissions due to the bypass failure of the SulfurOx Unit</u>**

139. Nucor also discovered a partially open safety pressure relief valve on the SulfurOx Unit following the engineering stack test in July 2019.

140. This open safety pressure release valve resulted in non-negligible amounts of hydrogen sulfide emissions bypassing the SulfurOx Unit.

141. During normal operating conditions, the safety pressure valve should open only in the event of an upset condition to depressurize the unit safely.

142. Contrary to its design, a safety pressure valve at the SulfurOx Unit was left partially open during normal operating conditions between 2017 and 2019. During this time, the safety pressure valve was left open outside of its intended purpose.

143. The process gas stream, which is supposed to travel though the SulfurOx Unit, consists of carbon dioxide, carbon monoxide, and untreated hydrogen sulfide. The process gas stream partially bypassed the SulfurOx Unit and was emitted to the atmosphere via the common stack for an unknown number of months between 2017 and 2019.

144. A common stack means "the exhaust of emissions from two or more affected units through a single flue." 40 C.F.R. § 63.7575.

145. Nucor undertook corrective action and ceased the use of the SulfurOx control system bypass during normal operation upon the Facility's start-up on November 18, 2019, after a seventy-day maintenance outage.

146. To determine how to comply with its Title V and PSD permits, Nucor conducted a series of operational and control system configuration modifications to maintain a fully closed safety relief valve during normal operation.

147. The safety pressure release valve was not fully closed until the final modification was successful on February 27, 2020. Nucor represented to LDEQ on July 28, 2021, that it was "comfortable that this valve will no longer open except during safety events, consistent with intent." LDEQ-EDMS Document 12830204, Letter from Nucor Steel Louisiana, LLC to Louisiana Department of Environmental Quality (July 28, 2021), Outstanding Enforcement Items to be Resolved Enforcement Tracking No. AE-CN-19-01088-AI No.157847.

**v. <u>Additional Excess Emissions of Sulfur and Other Pollutants</u>**

148. Pursuant to the NESHAP regulations, Nucor conducted performance tests for EQT0069 at the Facility on or about November 17 and 18, 2020, and retests on or about January 14, 2021, as required by 40 C.F.R. Part 63, Subpart DDDDD.

149. Nucor submitted to LDEQ the performance test reports for EQT0069 on January 8, 2021, and March 12, 2021. The performance test reports showed the Facility exceeded the pound-per-hour limits under the Facility's Title V Permit for the following pollutants at EQT0069 in the 2020 and 2021 tests: $PM_{2.5}$, $PM_{10}$, volatile organic compounds, carbon monoxide, sulfur dioxide, sulfuric acid, arsenic, barium, cadmium, chromium, cobalt, copper, lead, manganese, nickel, and selenium.

### D. Monitoring at the Nucor Facility

#### 1. Monitoring as required by NSPS

150. At all times relevant to this Complaint, Nucor has owned and operated a stationary source, which contains an affected facility. 40 C.F.R. § 60.1(a).

151. At all times relevant to this Complaint, the Facility has been subject to NSPS Subpart A. *See* Title V Permit V9.

152. At all times relevant to this Complaint, Nucor has operated a CEMS at Process Gas Heater EQT0069 for NOx at the Facility.

153. The CEMS at EQT0069 for NOx has been used to demonstrate compliance with emission limits on a continuous basis and thus has been subject to Appendix F of NSPS Subpart A. 40 C.F.R. § 60.13(a).

## CLEAN AIR ACT CLAIMS

## FIRST CLAIM FOR RELIEF

## Violations of the Louisiana State Implementation Plan and Nucor's Title V Permit for unauthorized emissions of hydrogen sulfide

154. Plaintiffs reallege and incorporate by reference the preceding paragraphs as if fully set forth herein.

155. Pursuant to the Louisiana SIP, Nucor cannot commence construction, modification, or operation of a facility which ultimately may result in an initiation of, or an increase in, emission of air contaminants as defined in LAC 33:III.111 until a permit (certificate of approval) has been issued by LDEQ, the permitting authority. LAC 33:III.501.C.2.

156. Pursuant to the Louisiana SIP, Nucor has a general duty to operate its major source under a permit, unless an exemption to the source applies or has been granted in accordance with

the SIP. Nucor must operate the Nucor Facility in accordance with all terms and conditions of the permit. LAC 33:III.501.C.4.

157. Nucor operated the Nucor Facility pursuant to Title V Permit V4, which was in effect from January 29, 2016, to January 29, 2021.

158. Nucor operated the Nucor Facility pursuant to Nucor's Title V Permit V5, which was in effect from June 13, 2019, to January 29, 2021.

159. Neither Nucor's Title V Permit V4 nor Title V Permit V5 allowed emissions of hydrogen sulfide.

160. Nucor made the following unpermitted emissions of hydrogen sulfide at its Facility in 2017 and 2018.

**Table 2. Hydrogen Sulfide Emissions (in tons per year)**

| Year | Permit No. | Actual Emissions (tpy) |
|---|---|---|
| 2017 | Title V Permit V4 | 24.25 |
| 2018 | Title V Permit V5 | 35.27 |

161. These unpermitted emissions of hydrogen sulfide amount to 730 days of violations.

162. Hydrogen sulfide is an air contaminant as defined in LAC 33:III.111.

163. Nucor operated its Nucor Facility in a manner that ultimately resulted in unauthorized emissions of hydrogen sulfide, in violation of LAC 33:III.501.C.2 and 501.C.4.

164. Pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), Nucor is liable to the United States for injunctive relief and civil penalties for violations of the Louisiana SIP and Nucor Facility's Title V permit, which occurred between 2017 and 2018. Pursuant to La. R.S. 30:2025, Nucor also is liable to LDEQ for injunctive relief and civil penalties.

## SECOND CLAIM FOR RELIEF

### Violations of the Louisiana SIP and Nucor's Title V Permit for excess emissions of

**hydrogen sulfide**

165. Plaintiffs reallege and incorporate by reference the preceding paragraphs as if fully set forth herein.

166. Pursuant to the Louisiana SIP, Nucor has a general duty to operate its major source under a permit, unless an exemption to the source applies or has been granted in accordance with the SIP. Nucor must operate the Nucor Facility in accordance with all terms and conditions of the permit. LAC 33:III.501.C.4.

167. The Nucor Facility's Title V Permits V6, V7, V8, and V9 required Nucor to comply with the emissions limits in Table 3 below.

168. In 2019, Nucor obtained from LDEQ Title V permit modifications to allow for limited emissions of hydrogen sulfide. Title V Permit V6. The permit limit was set at 0.11 tons per year and lowered to 0.08 tons per year later in 2019.

169. Nucor exceeded its permit limits for hydrogen sulfide in 2019 by emitting over 250 times the permit limit.

170. In 2020, Nucor obtained from LDEQ another permit modification to allow for more emissions of hydrogen sulfide at the Facility. Title V Permit V8. The expanded permit limit was set at 9.77 tons per year.

171. Nucor again exceeded its expanded emission limits for hydrogen sulfide in 2020.

172. Nucor exceeded its hydrogen sulfide emission permit limits at the Nucor Facility.

**Table 3. Hydrogen Sulfide Emissions Exceedances (in tons per year)**

| **Year** | **Permit No.** | **Actual Emissions (tpy)** | **Permit Limit (tpy)** | **Exceedance (tpy)** |
|---|---|---|---|---|
| 2019 | Title V Permit V6<br><br>Title V Permit V7 | 27.76 | 0.11<br><br>0.08 | 27.65 |

| | | | | |
|---|---|---|---|---|
| 2020 | Title V Permits V8 and V9 | 12.67 | 9.77 | 2.90 |

173. During 2019, Title V Permits V5, V6, and V7 were in effect at some point at the Facility. Of these three permits, Title V Permit V6 had the highest permitted limit for hydrogen sulfide and is the permit limit used here to determine the extent of the exceedance.

174. By exceeding its permitted hydrogen sulfide emission limits, Nucor did not operate within the terms and conditions of its Title V Permit and therefore violated its Title V Permits V6, V7, V8, and V9.

175. These excess emissions amount to 730 days of violations.

176. Pursuant to the Louisiana SIP, noncompliance with any term or condition of Nucor's permit constitutes a violation of the Louisiana SIP and is grounds for enforcement action, for permit revision or termination, or for denial of a permit renewal application. LAC 33:III.501.C.4.

177. Nucor therefore violated the Louisiana SIP. LAC 33:III.501.C.4.

178. Pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), Nucor is liable to the United States for injunctive relief and civil penalties for violations of the Louisiana SIP and Nucor Facility's Title V permit, which occurred between 2019 and 2020. Pursuant to La. R.S. 30:2025, Nucor also is liable to LDEQ for injunctive relief and civil penalties.

## THIRD CLAIM FOR RELIEF

### Violations of the Louisiana SIP and Nucor's Title V Permit for excess emissions of NOx

179. Plaintiffs reallege and incorporate by reference the preceding paragraphs as if fully set forth herein.

180. Pursuant to the Louisiana SIP, Nucor has a general duty to operate its major source under a permit, unless an exemption to the source applies or has been granted in accordance with

the SIP. Nucor must operate the Nucor Facility in accordance with all terms and conditions of the permit. LAC 33:III.501.C.4.

181. The Nucor Facility's Title V Permits V4AA, V5, V7, V8, V9, and V10 required Nucor to comply with the emissions limit of 0.007 pounds per million British Thermal Units (lb/MMBtu) of NOx at its Process Gas Heater.

182. Nucor exceeded its NOx emissions permit limits at the Nucor Facility on at least the 23 days described below in Table 4.

183. Each listed exceedance is the maximum exceedance for the listed period.

**Table 4. NOx Emissions at Process Gas Heater EQT0069 (in pounds per British Thermal Unit)**

| Period | Max Emissions Exceeding Permit Limit (0.007 lb/MMBtu) |
|---|---|
| 1/7/17 | 0.0131 |
| 1/11/17 | 0.013 |
| 10/23/17 | 0.0099 |
| 10/28/17 | 0.0089 |
| 11/30/17 | 0.0136 |
| 6/10/18 | 0.0076 |
| 6/16/18 | 0.0079 |
| 12/6/18 | 0.0390 |
| 12/2/19 | 0.0101 |
| 6/29/20 | 0.0083 |
| 7/21/20 | 0.0106 |
| 8/18/20 | 0.0111 |
| 9/30/20 | 0.0075 |
| 3/20/21 | 0.0075 |
| 8/12/21 | 0.0079 |
| 12/26/21 | 0.0077 |
| 1/2/22 | 0.0108 |
| 4/8/22 | 0.0187 |
| 7/13/22 | 0.0116 |
| 9/20/22 | 0.0381 |
| 8/17/23 – 8/19/23 | 0.0080 |
| 9/7/23 | 0.0855 |
| 9/25/23 | 0.0118 |
| 9/29/23 | 0.0083 |

184. As a result of exceeding its permitted NOx emission limit, Nucor violated its Title V Permits V4AA, V5, V7, V8, V9, and V10.

185. Pursuant to the Louisiana SIP, noncompliance with any term or condition of Nucor's permit constitutes a violation of the Louisiana SIP and is grounds for enforcement action, for permit revision or termination, or for denial of a permit renewal application. LAC 33:III.501.C.4.

186. Accordingly, Nucor violated the Louisiana SIP. LAC 33:III.501.C.4.

187. Pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), Nucor is liable to the United States for injunctive relief and civil penalties for violations of the Louisiana SIP and Nucor Facility's Title V permit, which occurred between 2018 and 2022. Pursuant to La. R.S. 30:2025, Nucor also is liable to LDEQ for injunctive relief and civil penalties.

## FOURTH CLAIM FOR RELIEF

## Violations of the Louisiana SIP and Nucor's Title V Permit for excess emissions of sulfur dioxide (pounds per hour)

188. Plaintiffs reallege and incorporate by reference the preceding paragraphs as if fully set forth herein.

189. Pursuant to the Louisiana SIP, Nucor has a general duty to operate its major source under a permit, unless an exemption to the source applies or has been granted in accordance with the SIP. Nucor must operate the Nucor Facility in accordance with all terms and conditions of the permit. LAC 33:III.501.C.4.

190. Specific Requirement 116 of Nucor Facility's Title V Permit V6 and V7 and Specific Requirement 134 of Nucor Facility's Title V Permit V9 required Nucor to comply with the sulfur dioxide emissions limit of 1.85 lb/hr at EQT0069 and of 0.02 lb/hr at EQT0071.

191. The Facility exceeded the maximum pound-per-hour permit limit for sulfur dioxide during the periods in Table 5 below:

**Table 5. Sulfur Dioxide Emissions at Process Gas Heater EQT0069 and EQT0071 (in pounds per hour)**

| Unit | Period | Permit Limit (lb/hr) | Hours Exceeded |
|---|---|---|---|
| EQT0069 | 07/10/2019 – 12/31/2019 | 1.85 | 2,312 |
| | 01/01/2020 – 01/29/2020 | 1.85 | 580 |
| | 01/30/2020 – 06/22/2020 | 2.45 | 1,382 |
| | 06/23/2020 – 06/30/2020 | 2.45 | 191 |
| | 07/01/2020 – 07/31/2020 | 2.45 | 3876 |
| | **Total** | | **8,341** |
| EQT0071 | 01/30/2020 – 06/22/2020 | 0.02 | 371 |
| | 07/01/2020 – 07/31/2020 | 0.02 | 209 |
| | **Total** | | **580** |

192. As a result of exceeding its permitted sulfur dioxide emission limits for 8,341 hours at EQT0069 and 580 hours at EQT0071, Nucor violated its Title V Permits V6, V7, V8, and V9.

193. Nucor's excess emissions of sulfur dioxide summarized above amount to violating its permit for over 347 days total at EQT0069 and over 24 days total at EQT0071 days.

194. Pursuant to the Louisiana SIP, noncompliance with any term or condition of Nucor's permit constitutes a violation of the Louisiana SIP and is grounds for enforcement action, for permit revision or termination, or for denial of a permit renewal application. LAC 33:III.501.C.4.

195. Accordingly, Nucor violated the Louisiana SIP. LAC 33:III.501.C.4.

196. Pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), Nucor is liable to the United States for injunctive relief and civil penalties for violations of the Louisiana SIP and Nucor Facility's Title V permit, which occurred between 2019 and 2020. Pursuant to La. R.S. 30:2025, Nucor also is liable to LDEQ for injunctive relief and civil penalties.

**FIFTH CLAIM FOR RELIEF**

**Violations of the Louisiana SIP and Nucor's Title V Permit for excess emissions of sulfur dioxide (tons per year)**

197. Plaintiffs reallege and incorporate by reference the preceding paragraphs as if fully set forth herein.

198. Pursuant to the Louisiana SIP, Nucor has a general duty to operate its major source under a permit, unless an exemption to the source applies or has been granted in accordance with the SIP. Nucor must operate the Nucor Facility in accordance with all terms and conditions of the permit. LAC 33:III.501.C.4.

199. The Nucor Facility's Title V Permits V4, V5, V8, and V9 required that the Nucor Facility source EQT0069 comply with the emissions limit for sulfur dioxide in 2018 and 2020 as described in the Table 6 below.

200. Nucor exceeded its yearly permit limits for sulfur dioxide emissions from EQT0069 at its Facility in 2018 and 2020, as described in Table 6 below.

**Table 6. Annual Sulfur Dioxide Emissions (in tons per year)**

| Year | Permit No. | Actual Emissions (tpy) | Permit Limit (tpy) | Exceedance (tpy) |
|---|---|---|---|---|
| 2018 | Title V Permit V4AA<br><br>Permit V5 | 16.59 | 6.71<br><br>7.50 | 9.09 |
| 2020 | Title V Permits V8 and V9 | 10.79 | 9.76 | 1.03 |

201. Title V Permits V4AA and V5 were in effect at some point in 2018 at the Facility. Title V Permit V5 had the highest permitted limit for sulfur dioxide, so it is the permit limit used to determine the extent of the exceedance.

202. As a result of exceeding its permitted sulfur dioxide emission limits, Nucor violated its Title V Permits V4AA, V5, V8, and V9.

203. Nucor's emissions in excess of its yearly sulfur dioxide permit limits at EQT0069 in 2018 and 2020 amount to 730 days of violations.

204. Pursuant to the Louisiana SIP, noncompliance with any term or condition of Nucor's permit constitutes a violation of the Louisiana SIP and is grounds for enforcement action, for permit revision or termination, or for denial of a permit renewal application. LAC 33:III.501.C.4.

205. Accordingly, Nucor is in violation of the Louisiana SIP. LAC 33:III.501.C.4.

206. Pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), Nucor is liable to the United States for injunctive relief and civil penalties for violations of the Louisiana SIP and Nucor Facility's Title V permit, which occurred between 2018 and 2020. Pursuant to La. R.S. 30:2025, Nucor also is liable to LDEQ for injunctive relief and civil penalties.

## SIXTH CLAIM FOR RELIEF

### Violations of the Louisiana SIP and Nucor's Title V Permit for unauthorized emissions of sulfuric acid

207. Plaintiffs reallege and incorporate by reference the preceding paragraphs as if fully set forth herein.

208. Pursuant to the Louisiana SIP, Nucor cannot commence construction, modification, or operation of a facility that ultimately may result in an initiation of, or an increase in, emission of air contaminants as defined in LAC 33:III.111 until a permit (certificate of approval) has been issued by LDEQ, the permitting authority. LAC 33:III.501.C.2.

209. Pursuant to the Louisiana SIP, Nucor has a general duty to operate its major source under a permit, unless an exemption to the source applies or has been granted in accordance with the SIP. Nucor must operate the Nucor Facility in accordance with all terms and conditions of the permit. LAC 33:III.501.C.4.

210. Nucor operated the Nucor Facility pursuant to Title V Permit No. V4AA, which was in effect from June 8, 2016, and expired on January 29, 2021.

211. Nucor operated the Nucor Facility pursuant to Title V Permit No. V5, which was in effect from June 22, 2018, to January 29, 2021.

212. Nucor operated the Nucor Facility pursuant to Title V Permit V6, which was in effect from June 13, 2019, to January 29, 2021.

213. Nucor operated the Nucor Facility pursuant to Title V Permit No. V7, which was in effect from August 8, 2019, to January 29, 2021.

214. Nucor's Title V Permits V4AA, V5, V6, and V7 did not authorize emissions of sulfuric acid.

215. Although Nucor was not authorized to emit sulfuric acid from the Facility, Nucor reported emissions of sulfuric acid from its Facility during its July 2019 engineering stack test.

216. According to Nucor's Unauthorized Discharge Notification, Nucor emitted sulfuric acid emissions for at least the prior three years.

**Table 7. Sulfuric Acid Emissions at Process Gas Heater EQT0069 (in tons per year)**

| Year | Permit No. | Actual Emissions (tpy) |
|---|---|---|
| 2017 | Title V Permit V4AA | 3.21 |
| 2018 | Title V Permits V4AA and V5 | 7.98 |
| 2019 | Title V Permits V5, V6, and V7 | 3.5 |

217. As a result of its unpermitted emissions of sulfuric acid, Nucor violated its Title V Permits V4AA, V5, V6, and V7 from at least 2017 through 2019.

218. Accordingly, Nucor is in violation of the Louisiana SIP. LAC 33:III.501.C.2 and 501.C.4.

219. Nucor's unpermitted emissions of sulfuric acid in 2017, 2018, and 2019 amount to 1,095 days of violations.

220. Pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), Nucor is liable to the United States for injunctive relief and civil penalties for violations of the Louisiana SIP and Nucor Facility's Title V permit, which occurred between 2017 and 2019. Pursuant to La. R.S. 30:2025, Nucor also is liable to LDEQ for injunctive relief and civil penalties.

**SEVENTH CLAIM FOR RELIEF**

**Violations of the Louisiana SIP and Nucor's Title V Permit for excess emissions of sulfuric acid (tons per year)**

221. Plaintiffs reallege and incorporate by reference the preceding paragraphs as if fully set forth herein.

222. Pursuant to the Louisiana SIP, Nucor has a general duty to operate its major source under a permit, unless an exemption to the source applies or has been granted in accordance with the SIP. Nucor must operate the Nucor Facility in accordance with all terms and conditions of the permit. LAC 33:III.501.C.4.

223. After disclosing its unpermitted emissions of sulfuric acid to LDEQ, Nucor sought and obtained permit modifications in 2020 to allow for limited emissions of sulfuric acid from its Facility. Pursuant to the Nucor Facility's Title V Permits V8 and V9, Nucor must comply with the emissions limit of 4.70 tons per year of sulfuric acid from the Process Gas Heater EQT0069.

224. Despite the new emissions limit for sulfuric acid, Nucor violated its permit in 2020 by emitting 5.19 tons per year of sulfuric acid from the Process Gas Heater.

225. By exceeding its permitted sulfuric acid emission limit, Nucor violated its Title V Permits V8 and V9.

226. Pursuant to the Louisiana SIP, noncompliance with any term or condition of Nucor's permit constitutes a violation of the Louisiana SIP and is grounds for enforcement action, for permit revision or termination, or for denial of a permit renewal application. LAC 33:III.501.C.4.

227. Accordingly, Nucor is in violation of the Louisiana SIP. LAC 33:III.501.C.4.

228. Nucor's sulfuric acid emissions in excess of its permit limits in 2020 amount to 365 days of violations.

229. Pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), Nucor is liable to the United States for injunctive relief and civil penalties for violations of the Louisiana SIP and Nucor Facility's Title V permit, which occurred in 2020. Pursuant to La. R.S. 30:2025, Nucor also is liable to LDEQ for injunctive relief and civil penalties.

## EIGHTH CLAIM FOR RELIEF

### Violations of the Louisiana SIP and Nucor's Title V Permit for excess emissions of sulfuric acid (pounds-per-hour)

230. Plaintiffs reallege and incorporate by reference the preceding paragraphs as if fully set forth herein.

231. Pursuant to the Louisiana SIP, Nucor has a general duty to operate its major source under a permit, unless an exemption to the source applies or has been granted in accordance with the SIP. Nucor must operate the Nucor Facility in accordance with all terms and conditions of the permit. LAC 33:III.501.C.4.

232. The Nucor Facility's Title V Permits V8 and V9 required Nucor to comply with the emissions limit of 1.18 pounds per hour of sulfuric acid from EQT0069 in 2020.

233. According to Nucor's Title V Semiannual Monitoring Reports and subsequent correspondence to LDEQ, Nucor exceeded the permitted pounds-per-hour limit for sulfuric acid at EQT0069 for 5,496 hours from January 1, 2020, to December 31, 2020.

234. As a result of exceeding its permitted hourly sulfuric acid emission limits, Nucor violated its Title V Permits V7, V8, and V9.

235. Nucor's exceedances of its hourly emissions limits amount to violating its permit for a total of 229 days (5,496 hours).

236. Pursuant to the Louisiana SIP, noncompliance with any term or condition of Nucor's permit constitutes a violation of the Louisiana SIP and is grounds for enforcement action, for permit revision or termination, or for denial of a permit renewal application. LAC 33:III.501.C.4.

237. Accordingly, Nucor is in violation of the Louisiana SIP. LAC 33:III.501.C.4.

238. Pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), Nucor is liable to the United States for injunctive relief and civil penalties for violations of the Louisiana SIP and Nucor Facility's Title V permit, which occurred in 2020. Pursuant to La. R.S. 30:2025, Nucor also is liable to LDEQ for injunctive relief and civil penalties.

## NINTH CLAIM FOR RELIEF

**Violations of the Louisiana SIP, Nucor's Title V Permit, and Nucor's PSD Permit for excess emissions of particulate matter, volatile organic compounds, carbon monoxide, sulfur dioxide, sulfuric acid, arsenic, barium, cadmium, chromium, cobalt, copper, lead,**

**manganese, nickel, and selenium**

239. Plaintiffs reallege and incorporate by reference the preceding paragraphs as if fully set forth herein.

240. Pursuant to the Louisiana SIP, Nucor has a general duty to operate its major source under a permit, unless an exemption to the source applies or has been granted in accordance with the SIP. Nucor must operate the Nucor Facility in accordance with all terms and conditions of the permit. LAC 33:III.501.C.4.

241. Nucor conducted performance tests for EQT0069 on November 17 and 18, 2020, and on January 14, 2021. Nucor exceeded the average pound-per-hour limits under its Title V Permit for the following pollutants at EQT0069 in the 2020 and 2021 tests in Table 8.

**Table 8. Title V Emissions at Process Gas Heater EQT0069**

| Pollutant | Title V Permit V9 Limit (average lb/hr) | 11/17/2020 & 11/18/2020 Performance Test Results (lb/hr) | 1/14/2021 Performance Test Results (lb/hr) |
|---|---|---|---|
| $PM_{2.5}$ | 6.69 | - | 13.45 |
| $PM_{10}$ | 6.69 | 14.29 | 14.18 |
| VOC | 4.18 | 49.49 | - |
| Carbon Monoxide | 44.57 | 72.38 | 102.65 |
| Sulfur Dioxide | 2.23 | 3.39 | - |
| Sulfuric Acid | 1.07 | 2.10 | 3.32 |
| Arsenic | <0.001 | 0.0017 | 0.0013 |
| Barium | 0.005 | - | 0.0058 |
| Cadmium | 0.001 | 0.024 | - |
| Chromium | 0.002 | 0.004 | 0.0021 |
| Cobalt | 0.003 | 0.0055 | 0.0064 |
| Copper | <0.001 | 0.0029 | 0.0013 |
| Lead | <0.001 | 0.0025 | 0.0015 |
| Manganese | 0.003 | - | 0.019 |
| Nickel | 0.002 | 0.0021 | 0.0021 |
| Selenium | <0.001 | 0.0019 | 0.0013 |

242. According to Nucor's January 8, 2021, and March 21, 2021, submissions of performance test reports for EQT0069 to LDEQ the Facility exceeded the average pound-per-hour

limits under the Facility's PSD Permit for the following pollutants at EQT0069 in the 2020 and 2021 tests in the Table 9.

**Table 9. PSD Permit Emissions at Process Gas Heater EQT0069**

| Pollutant | PSD Permit M4 Limit (average lb/hr) | 11/17/2020 and 11/18/2020 Performance Test Results (lb/hr) | 1/14/2021 Performance Test Results (lb/hr) |
|---|---|---|---|
| $PM_{2.5}$ | 5.54 | - | 13.45 |
| $PM_{10}$ | 5.54 | 14.29 | 14.18 |
| Sulfur Dioxide | 1.85 | 3.39 | 2.28 |
| Carbon Monoxide | 36.92 | 72.38 | 102.65 |
| VOC | 4.60 | 49.49 | - |

243. By exceeding its permitted emission limits for $PM_{10}$, VOCs, carbon monoxide, sulfur dioxide, sulfuric acid, arsenic, cadmium, chromium, cobalt, copper, lead, nickel, and selenium, Nucor violated its Title V Permit V9 in 2020.

244. By exceeding its permitted emission limits for $PM_{2.5}$, $PM_{10}$, carbon monoxide, sulfuric acid, arsenic, barium, chromium, cobalt, copper, lead, manganese, nickel, and selenium, Nucor violated its Title V Permit V9 in 2021.

245. By exceeding its permitted emission limits for $PM_{10}$, sulfur dioxide, carbon monoxide, and VOCs, Nucor violated its PSD Permit in 2020.

246. By exceeding its permitted emission limits for $PM_{10}$, sulfur dioxide, and carbon monoxide, Nucor violated its PSD Permit in 2021.

247. Pursuant to the Louisiana SIP, noncompliance with any term or condition of Nucor's permit constitutes a violation of the Louisiana SIP and is grounds for enforcement action, for permit revision or termination, or for denial of a permit renewal application. LAC 33:III.501.C.4.

248. Pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), Nucor is liable to the United States for injunctive relief and civil penalties for violations of the Louisiana SIP and Nucor Facility's Title V permit, which occurred between 2020 and 2021. Pursuant to La. R.S. 30:2025, Nucor also is liable to LDEQ for injunctive relief and civil penalties.

## TENTH CLAIM FOR RELIEF:

## Violations of the Louisiana SIP and Nucor's Title V Permit

## for failure to conduct valid CEMS audit

249. Plaintiffs reallege and incorporate by reference the preceding paragraphs as if fully set forth herein.

250. The Nucor Facility must follow the Specific Requirements detailed in its Title V permit, pursuant to the Louisiana SIP. Nucor has a general duty to operate its major source under a permit unless an exemption to the source applies or has been granted in accordance with the SIP. Nucor must operate the Nucor Facility in accordance with all terms and conditions of the permit. LAC 33:III.501.C.4.

251. Nucor must have a permit that has sufficient monitoring requirements to assure compliance with the terms and conditions of its permit as required by 40 C.F.R. § 70.6(a)(3), pursuant to LAC 33:III.507.H.1.a.

252. Nucor must follow Specific Requirement Part 60 of its Title V permit, which requires that a CEMS monitor NOx continuously and that Nucor ensures the measurement system's quality is assured by the procedures in 40 C.F.R. Part 60, Appendix F.

253. Nucor must audit each CEMS at least once each calendar quarter. The audits cannot occur within two months of the previous audit, pursuant to 40 C.F.R. Part 60 Appendix F, Procedure 1, Section 5.

254. For a Relative Accuracy Test Audit, Nucor must conduct the audit at least once every four calendar quarters, pursuant to 40 C.F.R. Part 60 Appendix F, Procedure 1, Section 5.

255. For a Cylinder Gas Audit, Nucor must conduct the audit in either three of four calendar quarters, but in no more than three quarters in a succession, pursuant to 40 C.F.R. Part 60 Appendix F, Procedure 1, Section 5.

256. Nucor reported that it conducted a Cylinder Gas Audit for Process Gas Heater EQT0069's NOx CEMS on March 13, 2019, and a Relative Accuracy Test Audit on May 7, 2019. Nucor conducted these two audits closer in time than the required two months apart.

257. Nucor, therefore, failed to conduct valid CEMS audits at Process Gas Heater EQT0069 for NOx.

258. By conducting an audit within two months of the previous audit, Nucor violated its Title V Permit V5 in 2019.

259. Pursuant to the Louisiana SIP, noncompliance with any term or condition of Nucor's permit constitutes a violation of the Louisiana SIP and is grounds for enforcement action, for permit revision or termination, or for denial of a permit renewal application. LAC 33:III.501.C.4.

260. Accordingly, Nucor violated the Louisiana SIP. LAC 33:III.501.C.4.

261. Pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), Nucor is liable to the United States for injunctive relief and civil penalties for violations of the Louisiana SIP and Nucor Facility's Title V permit, which occurred in 2019. Pursuant to La. R.S. 30:2025, Nucor also is liable to LDEQ for injunctive relief and civil penalties.

## ELEVENTH CLAIM FOR RELIEF

**Violations of the Louisiana SIP and Nucor's Title V Permit for failure to conduct a**

**Relative Accuracy Test Audit at the EQT0069 NOx CEMS**

262. Plaintiffs reallege and incorporate by reference the preceding paragraphs as if fully set forth herein.

263. Nucor must follow the Specific Requirements detailed in its Title V permit, pursuant to the Louisiana SIP. Nucor has a general duty to operate its major source under a permit unless an exemption to the source applies or has been granted in accordance with the SIP. Nucor must operate the Nucor Facility in accordance with all terms and conditions of the permit. LAC 33:III.501.C.4.

264. Nucor must have a permit that has sufficient monitoring requirements to assure compliance with the terms and conditions of the permit as required by 40 C.F.R. § 70.6(a)(3). LAC 33:III.507.H.1.a.

265. Nucor must follow Specific Requirement Part 60, which requires that a CEMS monitor NOx continuously and that Nucor ensures the measurement system's quality is assured by the procedures in 40 C.F.R. Part 60, Appendix F.

266. For a Relative Accuracy Test Audit, Nucor should have conducted the audit at the ETQ0069 NOx at least once every four calendar quarters.

267. Nucor failed to conduct the required Relative Accuracy Test Audit during the second quarter of 2020.

268. Accordingly, Nucor violated its Title V Permit V9 in 2020.

269. Pursuant to the Louisiana SIP, noncompliance with any term or condition of Nucor's permit constitutes a violation of the Louisiana SIP and is grounds for enforcement action, for permit revision or termination, or for denial of a permit renewal application. LAC 33:III.501.C.4.

270. Accordingly, Nucor violated the Louisiana SIP. LAC 33:III.501.C.4.

271. Pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), Nucor is liable to the United States for injunctive relief and civil penalties for violations of the Louisiana SIP and Nucor Facility's Title V permit, which occurred between 2020 and 2021. Pursuant to La. R.S. 30:2025, Nucor also is liable to LDEQ for injunctive relief and civil penalties.

**TWELFTH CLAIM FOR RELIEF**

**Violations of the Louisiana SIP and Nucor's PSD and Title V Permits for failure to apply BACT for NSR pollutants that would result in a significant emissions increase**

272. Plaintiffs reallege and incorporate by reference the preceding paragraphs as if fully set forth herein.

273. Pursuant to the Louisiana SIP, Nucor has a general duty to operate its major source under a permit, unless an exemption to the source applies or has been granted in accordance with the SIP. Nucor must operate the Nucor Facility in accordance with all terms and conditions of the permit. LAC 33:III.501.C.4.

274. Pursuant to the Louisiana SIP, Nucor must submit a permit modification application to LDEQ before making a major modification. LAC 33:III.509.A.3. Nucor must also apply BACT for each regulated NSR pollutant for which the major modification would result in a significant net emissions increase. LAC 33:III.509.J.3.

275. The Nucor Facility's Specific Requirement 545 of Title V Permits V4 and V4AA, Specific Requirement 497 of Title V Permit V5, Specific Requirement 116 of Title V PermitsV6 and V7, Specific Requirement 126 of Title V Permit V8, and Specific Requirement 134 of Title V Permit V9 each require that the Nucor Facility apply BACT for each regulated NSR pollutant for which it would result in a significant emissions increase at the source.

276. Nucor's PSD Permit and Title V Permit requires the Nucor Facility to apply BACT for NSR pollutants including sulfur dioxide, hydrogen sulfide, and sulfuric acid.

277. Nucor completed a major modification when it stopped operating as designed and permitted and it instead began bypassing the Acid Gas Recovery Unit. This resulted in a significant emissions increase at the Process Gas Heater EQT0069. The emissions included hydrogen sulfide and sulfuric acid mist—neither of which Nucor was authorized to emit in any quantity until 2019 and 2020, respectively.

278. Nucor did not submit an application for a permit modification for this major change until July 27, 2021.

279. Nucor failed to apply BACT for sulfur dioxide, hydrogen sulfide, and sulfuric acid mist emissions by allowing tail gas into the process heater fuel gas system without pre-treatment from July 2014 to September 2023.

280. Nucor violated its Title V Permit for failing to apply BACT for each regulated NSR pollutant for which it would result in a significant emissions increase at the source during 2017, 2018, 2019, 2020, 2021, and 2022.

281. Nucor violated its PSD Permit (i.e., PSD Permits M2, M3, and M4) for failing to apply BACT for each regulated NSR pollutant for which it would result in a significant emissions increase at the source during 2017, 2018, 2019, 2020, 2021, and 2022.

282. Nucor violated LAC 33:III.501.C.4 and 509.J.3 for failing to apply BACT for each regulated NSR pollutant for which it would result in a significant increase in emissions at the source during 2017, 2018, 2019, 2020, 2021, and 2022.

283. Nucor's failure to comply with the BACT requirements to control its emissions from the Facility amounts to 2,188 days of violations.

284. Pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), Nucor is liable to the United States for injunctive relief and civil penalties for violations of the Louisiana SIP and Nucor Facility's Title V and PSD permits, which occurred between 2017 and 2022. Pursuant to La. R.S. 30:2025, Nucor also is liable to LDEQ for injunctive relief and civil penalties.

## THIRTEENTH CLAIM FOR RELIEF

### Violations of the Louisiana SIP for failure to submit a permit application before construction, reconstruction, or modification of the Facility

285. Plaintiffs reallege and incorporate by reference the preceding paragraphs as if fully set forth herein.

286. Pursuant to the Louisiana SIP, Nucor cannot commence construction, modification, or operation of a facility which ultimately may result in an initiation of, or an increase in, emission of air contaminants as defined in LAC 33:III.111 until the appropriate permit fee has been paid (in accordance with LAC 33:III.Chapter 2) and a permit (certificate of approval) has been issued by LDEQ, the permitting authority. LAC 33:III.501.C.2.

287. Pursuant to the Louisiana SIP, to begin construction, Nucor must have a permit that states that the major stationary source or major modification will meet the requirements of LAC 33:III.509.J – R.5. LAC 33:III.509.A.3.

288. Nucor also failed to submit a permit application before modifying its permit for two processes.

289. First, Nucor stopped treating the fuel gas for Process Gas Heater EQT0069 with the Acid Gas Recovery Unit in July 2014.

290. This resulted in a significant increase in emissions of hydrogen sulfide and sulfuric acid mist.

291. Nucor's bypass of the Acid Gas Recovery Unit was a major modification of the Nucor Facility as defined under the Louisiana SIP.

292. These modifications triggered the requirements to obtain preconstruction permits, including among other things, the requirements to establish emission limits and operate in compliance with BACT.

293. Nucor failed to submit a permit application before construction, reconstruction, or modification of the Acid Gas Recovery Unit, for hydrogen sulfide and sulfuric acid mist emissions.

294. After commencing bypassing the Acid Gas Recovery Unit in July 2014, Nucor did not submit a Title V Air Permit Renewal Application and a PSD Modification Application to LDEQ to address the removal of the Acid Gas Recovery Unit until July 27, 2021.

295. Nucor violated LAC 33:III.509.A.3 and LAC 33:III.501.C.2 in 2017, 2018, 2019, 2020, and 2021 for failing to submit a permit modification application prior to discontinuing use of the Acid Gas Recovery Unit.

296. Second, the Nucor Facility operated Process Gas Heater EQT0069 and Acid Gas Absorption Vent Unit EQT0072 with the same stack.

297. In 2011, the Nucor Facility's Title V Permit V0 originally permitted the operation of Process Gas Heater EQT0069 and the Acid Gas Absorption Vent EQT0072 as separate emissions sources with their own stacks.

298. Nucor, however, never constructed the stack for EQT0072, so the stacks of Process Gas Heater EQT0069 and Acid Gas Absorption Vent EQT0072 were combined into one stack.

299. The Nucor Facility thus operated contrary to its permit authorization.

300. Nucor did not submit Title V and PSD permit applications to LDEQ until July 27, 2021, to address the reconciliation of the stack parameters for Process Gas Heater EQT0069 and Acid Gas Absorption Vent EQT0072.

301. Nucor violated the Louisiana SIP in 2017, 2018, 2019, 2020, and 2021 for failing to submit a permit application before construction, reconstruction, or modification of the DRI 1 Unit, pursuant to LAC 33:III.501.C.2.

302. Nucor's violation continued for 2,451 days.

303. Pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), Nucor is liable to the United States for injunctive relief and civil penalties for violations of the Louisiana SIP, which occurred between 2017 and 2021. Pursuant to La. R.S. 30:2025, Nucor also is liable to LDEQ for injunctive relief and civil penalties.

**PRAYER FOR RELIEF**

WHEREFORE, the United States and LDEQ respectfully request that the Court provide the following relief:

A. Order Nucor to take all measures necessary to come into compliance with the CAA and LEQA at the Nucor Facility.

B. Order Nucor to take other appropriate actions to remedy, mitigate, and offset the harm caused by its violations by, *inter alia*, requiring Nucor to address or offset its unlawful emissions;

C. Assess a civil penalty against Nucor of up to $124,426 per day for each violation that occurs or occurred after November 2, 2015, where penalties are assessed after January 8, 2025; and up to $32,500 per day for each violation of the LEQA;

D. Award Plaintiffs their costs of this action; and

E. Award Plaintiffs such other and further relief that the Court deems just and proper.

Respectfully submitted,

Date: September 24, 2026

FOR THE UNITED STATES OF AMERICA:

ADAM R.F. GUSTAFSON
Principal Deputy Assistant Attorney General
Energy and Natural Resources Division
United States Department of Justice

Trial Attorney: KIANA COURTNEY (Florida Bar No. 1010206)
Trial Attorney
United States Department of Justice
Energy and Natural Resources Division
Environmental Enforcement Section
P.O. Box 7611, Ben Franklin Station
Washington, DC 20044
Telephone: (202) 532-3316
Kiana.Courtney@usdoj.gov

MICHAEL M. SIMPSON
Acting United States Attorney
Eastern District of Louisiana

ELIZABETH A. CHICKERING (31099)
Assistant United States Attorney
650 Poydras St. – Suite 1600
New Orleans, Louisiana 70130
Telephone: (504) 680-3180
Facsimile: (504) 680-3174
Elizabeth.Chickering@usdoj.gov

OF COUNSEL JAMIE J. LEE
Assistant Regional Counsel
U.S. Environmental Protection Agency, Region 6
1201 Elm Street, Suite 500
Dallas, Texas 75270

FOR THE LOUISIANA DEPARTMENT OF ENVIRONMENTAL QUALITY:

Trial Attorney: OSCAR MAGEE (LA Bar No. 32302)
SHANE LANDRY (LA Bar No. 26580)
Louisiana Department of Environmental Quality
Office of the Secretary
P.O. Box 4302
Baton Rouge, LA 708521-4302
Telephone: (225) 219-4046
oscar.magee@la.gov